UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BLACK VETERANS PROJECT and NATIONAL VETERANS COUNCIL FOR LEGAL REDRESS,<br><br>Plaintiffs,<br><br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>Defendant. | Civil Action No. 3:21-cv-00935<br><br>COMPLAINT<br><br><br><br>July 8, 2021 |

## INTRODUCTION

Black Americans have fought and sacrificed for America's freedom since this nation's founding. Crispus Attucks, a Black American, protested alongside other patriots against the British, and became the first casualty of the Boston Massacre in 1770. Thousands of Black Americans from every colony followed Attucks' example. They joined the Continental Army and state militias, and fought in every major battle of the war. The First Rhode Island Regiment, an all-Black unit, fought in the Revolution's final battle—the Battle of Yorktown—and broke through British defenses to win the war. Since then, Black Americans have served with valor in every conflict in the nation's history, often hoping that military service would provide them the rights and liberties long denied to them by their country.

Despite their service, Black veterans have often faced severe race discrimination, not just within the military, but also upon their transition back to civilian life, including in government provision of health care and benefits to veterans. Congress established the U.S. Department of Veterans Affairs (VA) to honor the nation's sacred promise to care for those who have served, yet the VA has consistently neglected and discriminated against Black veterans. Recent revelations

1

regarding widespread discrimination across VA facilities highlight that the VA has failed to address systemic racism and call into question whether VA has been fairly administering benefits to Black veterans. VA has hidden its systemic racism and neglect from the public's view for too long, and has historically taken few steps to acknowledge and rectify the issue. Only by revealing information about how Black veterans have been treated by the VA can the country start to address the issue and work towards equal opportunity for all those who served in uniform.

Plaintiffs Black Veterans Project ("BVP") and the National Veterans Council for Legal Redress ("NVCLR") (collectively "Plaintiffs") requested records from the VA pursuant to the Freedom of Information Act ("FOIA") that will shed light on the racial disparities across the VA benefits system, specifically at the Veterans Benefits Administration ("VBA"), Veterans Health Administration ("VHA") and Board of Veterans' Appeals ("BVA"). The VA disclosed some records in response to Plaintiffs' request, but in violation of the FOIA, it failed to conduct a reasonable search and provide all the requested records. This action is brought under 5 U.S.C. § 552 for declaratory and injunctive relief to compel a reasonable search for records and timely production of responsive, non-exempt records.

If the VA continues to delay the production of these records, yet another generation of Black veterans will face racially discriminatory barriers to accessing the full benefits they have earned. The information requested will inform advocacy to redress the systemic racism that prevents Black veterans from receiving the benefits they deserve. VA's prompt, complete response to BVP and NVCLR's FOIA requests is necessary to bring this important information to light.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 522(a)(4)(B) and 28 U.S.C. §§ 1331 and 1361.

2. Venue lies in this district under 5 U.S.C. § 552 (a)(4)(B) and 28 U.S.C. § 1391(e)(1) as Plaintiff NVCLR is incorporated in Connecticut, has its principal place of business in New Haven, CT, and no real property is involved in the action.

## PARTIES

3. Plaintiff BVP is an organization that advances research and storytelling to understand the full history of the Black veteran experience in the United States, including racial inequities across the military and veteran landscape. BVP draws on data to foster new research to educate the public, elected officials, and military stakeholders on issues facing Black veterans. BVP resides and has its principal place of business in Washington, D.C.

4. Plaintiff NVCLR is a Connecticut-based veterans service organization that has served veterans in Connecticut since 1982. The organization operates a referral network to direct veterans to legal assistance and social services, and also engages in legal and policy advocacy on behalf of veterans. In addition to providing veterans with support in obtaining employment, meals, clothing, transportation, and housing, NVCLR is focused on the issue of benefits access. The organization advocated for years to ensure that all who served our country can secure crucial benefits and compensation. NVCLR is headquartered in Connecticut and has its principal place of business in New Haven, CT.

5. Defendant VA is the federal agency that administers the laws providing benefits and other services to veterans, their dependents, and their beneficiaries. The VA includes the agencies: VBA, VHA, and BVA. VA is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## STATEMENT OF FACTS

### The VA Discriminates Against Black Veterans

6. There are over two million living Black veterans in the United States.

7. Black Americans have served in every branch of the military and in every conflict since the American Revolution. Many served in uniform with the belief that it would provide them greater liberties and rights. Black leaders like Frederick Douglass and W.E.B. Du Bois believed that military service would help Black Americans attain the full citizenship they deserved.

8. The VA quotes President Abraham Lincoln in its motto to care for those "who shall have borne the battle," and their families and survivors. The veterans benefits system carries out this mission to care for all those who served in uniform and their families. Among other things, the VA provides disability compensation benefits to veterans with medical conditions incurred in, caused by, or aggravated by their military service. These benefits are monthly, tax-free payments that range from $133 to $3,400 depending on veterans' disability rating. The VA assigns ratings to veterans' disabilities based on their severity.

9. The VA also provides education benefits, life insurance, mortgage assistance, and other support to former service members who have returned to civilian life.

10. However, the federal government has historically discriminated against Black veterans, who receive inferior benefits and unequal treatment from the VA.

11. The VA's predecessor—the Veterans Administration—participated in barring World War II Black veterans from fully accessing the Servicemen's Readjustment Act of 1944, commonly known as the "GI Bill." After World War II, Black veterans were disproportionately referred to unskilled or menial jobs, relegated to vocational schools rather than universities, and denied mortgages. While the GI Bill uplifted families of white veterans with education and housing benefits, Black veterans' families suffered generationally from this disparate treatment. Hilary Herbold, *Never a Level Playing Field: Blacks and the GI Bill*, 6 J. BLACKS HIGHER EDUC. 104, 104–06 (Winter 1994/1995).

12. Black veterans continue to face disparities compared to non-Black veterans. They face disparities in health and disability compensation claims outcomes—across all types of mental and physical health conditions—within the VA. For example, a 2003 study of over 3,300 veterans found that Black veterans were significantly less likely to be granted service connection for post-traumatic stress disorder (PTSD) compared to non-Black veterans, even after adjusting for differences. Maureen Murdoch et al., *Racial Disparities in VA Service Connection for Posttraumatic Stress Disorder Disability*, 41 MED. CARE 536 (2003). This lack of service connection prevents these veterans from accessing disability benefits.

13. The VA also provides health care benefits. The VHA, a unit of the VA, is the largest integrated healthcare system in the nation, serving over 9 million veterans at 1,293 health care facilities, 171 VA Medical Centers, and 1,112 outpatient sites.

14. Racial disparities between Black and white patients are a well-documented reality in healthcare. Studies have found that racial and ethnic minorities receive lower-quality healthcare compared to white patients, even when all other factors like insurance status, income, and age are controlled. For example, compared to white patients with heart disease, Black patients with the same condition are likelier to receive cheaper, older, and more conservative treatments, including being discharged too early. Khiara M. Bridges, *Implicit Bias and Racial Disparities in Health Care*, 43 HUM. RTS. MAG. 19, 19-20 (2018).

15. Disparities in healthcare are particularly striking in the treatment of pain, with Black Americans systematically undertreated for pain relative to white Americans. Kelly M. Hoffman et al., *Racial Bias in Pain Assessment and Treatment Recommendations, and False Beliefs About Biological Differences Between Blacks and Whites*, 113 PROC. NAT'L ACAD. SCI.

U.S. AM. 4296, 4296 (2016). Black Americans' health conditions are frequently misdiagnosed, underdiagnosed, and generally minimized.

16. There is no reason to believe that the VA's healthcare system is immune from this medical racism. In fact, several studies specifically examined the VA healthcare system and found that healthcare disparities persist between Black and white patients even when controlling for factors like economic status and outside insurance coverage.

17. For example, one study found that Black veterans are less likely to receive medical procedures at the VA, such as cardiac catheterization, compared to white veterans who report the same symptoms. Jeff Whittle et al., *Racial Differences in the Use of Invasive Cardiovascular Procedures in the Department of Veterans Affairs Medical System*, 329 NEW ENGLAND J. MED. 621, 623 (1993). As a result, non-white veterans face worse intermediate health outcomes compared to white veterans at the VA.

18. A significant proportion of Black veterans report perceived discrimination with the VA, low perceived quality of care, and low satisfaction with their VA healthcare. Nathaniel Rickles et al., *Perceptions of Healthcare, Health Status, and Discrimination Among African-American Veterans,* 4. HEALTH DISPARITIES RES. & PRAC. 50, 50 (2020).

19. Recent accounts also demonstrate that the VA has failed to address systemic racism at its facilities. For example, Black employees and veterans at the Kansas City VA Medical Center have complained for years about a demeaning and discriminatory work environment, including frequent use of racial slurs, jokes about lynching, and being disproportionately terminated and denied promotion. Matt Evans, *Protestors Calling for End to Racial Discrimination at Kansas City VA Medical Center*, KMBC NEWS (June 15, 2020) (*available at*

https://www.kmbc.com/article/protesters-calling-for-end-to-racial-discrimination-at-kansas-city-va-medical-center/32867533).

20. A nationwide survey of nearly 1,500 VA staff members by the American Federation of Government Employees found that nearly eighty percent of VA workers believed that racism at the VA was a moderate or serious problem, and more than half reported that they had witnessed discrimination against veterans. Alex Horton, *Most VA Workers See Racism Against Colleagues and Veterans, Union Survey Finds*, WASH. POST (Aug. 7, 2020) (*available at* https://www.washingtonpost.com/national-security/2020/08/07/veterans-affairs-racism).

21. Racism at the VA was revealed even more clearly when it was discovered that several BVA attorneys and administrative law judges – the individuals who decide whether a particular veteran will receive benefits – participated in an email chain called the "Forum of Hate." The email chain contained years of racist, sexist, and homophobic slurs. Brian Flood, *Attorneys in 'Forum of Hate' Email Chain Suspended Indefinitely*, Bloomberg Law (June 26, 2020) (*available at* https://news.bloomberglaw.com/us-law-week/attorneys-in-forum-of-hate-email-chain-suspended-indefinitely).

22. The VA has historically taken few steps to acknowledge discrimination in the agency. For example, facing a congressionally-backed investigation by the Government Accountability Office over its systemic racism in 2020, the then-VA Press Secretary called the investigation "nothing more than a shameful attempt to besmirch the reputations of . . . employees at VA," ignoring that the investigation was initiated specifically because of employees' complaints. Alex Horton, *VA Will Be Investigated After 'Staggering Accounts of Racism,' Sen. Warren Says*, WASH. POST (Oct. 1, 2020) (*available at* https://www.washingtonpost.com/national-security/2020/10/01/gao-racism-veterans-affairs).

**Plaintiffs' FOIA Requests**

23. On February 22, 2021, Plaintiffs submitted FOIA requests via email to three VA units: VBA, VHA and BVA. Copies are attached as **Attachments A, B, and C,** respectively.

*VBA Request*

24. The next day, VBA acknowledged receipt of the FOIA request and assigned the request the tracking number 21-03679-F. The VBA acknowledgment of receipt is included as **Attachment D**.

25. Pursuant to 5 U.S.C. § 553 (a)(6)(A)(ii), VBA had twenty (20) business days from February 22, 2021, to make a determination regarding Plaintiffs' request, or until March 22, 2021.

26. On March 22, 2021, VBA exercised its statutory right to claim a one-time, ten-day extension, 5 U.S.C. 552 § (a)(6)(B)(i)-(iii), thereby extending its deadline to April 5, 2021.

27. On April 1, 2021, VBA sent its first interim Initial Agency Decision ("IAD") (copy included as **Attachment E**). It referred Items 4 and 6 of the request to the BVA, and assigned it a request tracking number of 21-04716-F. It issued a "no records" response for Item 15, and it stated it would continue to search for records responsive to Items 1-3, 5, 7-14, and 16.

28. On April 24, 2021, Plaintiffs appealed VBA's "no records" response for Item 15 in VBA's first IAD. On April 26, 2021, VBA acknowledged receipt of the appeal.

29. VBA provided a second Interim Agency Decision for Items 1-14 (including Items 4 and 6, after retracting the referral to BVA) on June 16, 2021, and referred its response for Item 16 to the Office of the Assistant Secretary for Human Resources and Administration (OASHR) under the tracking number 21-06776-F (copy included as **Attachment F**).

30. VA's deadline to respond in full to Item 16 was April 5, 2021; it has not done so.

31. VBA has not responded to the Plaintiff's appeal of its "no records" response for Item 15. Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), VBA had 20 business days from April 24, 2021, to respond to Plaintiffs' appeal, or until May 21, 2021.

32. On July 7, 2021, Plaintiffs timely filed an administrative appeal of VBA's response to Items 1-14. The statutory deadline for VA to adjudicate this administrative appeal is August 4, 2021.

### *VHA Request*

33. On February 22, 2021, VHA acknowledged receipt of the FOIA request and assigned the FOIA request the tracking number 21-03677-F (copy included as **Attachment G**).

34. The same day, VHA asked via email for clarification regarding Item 1, namely whether the request sought information specific to veterans and/or veterans and employees. On February 22, 2021, Plaintiffs clarified to VHA that they seek information on both veterans and employees.

35. On February 23, 2021, the Office of General Counsel ("OGC") sent notification that Items 5 and 6 of the FOIA were referred to the OGC FOIA Office with tracking number 21-03734-F (copy included as **Attachment H**).

36. Pursuant to 5 U.S.C. §552(a)(6)(A)(i), VHA was obligated to respond to Plaintiffs' request within twenty (20) business days. The deadline for disclosure of non-exempt records responsive to Items 5 and 6 expired on March 22, 2021. OGC has not responded as to Items 5 and 6.

37. On February 24, 2021, VHA informed BVP and NVCLR that Items 1-4 were referred to the Office of Resolution Management, Diversity & Inclusion ("ORMDI") under tracking number 21-03737-F (copy included as **Attachment I**).

38. On March 18, 2021, ORMDI provided an initial agency decision for Items 1-4 (copy included as **Attachment J**). In response to Item 1, ORDMI provided the number of formal Equal Employment Opportunity complaints at VHA stations and issued a "no records" response with regard to complaints at VHA Community Based Outpatient Clinics and Veterans Centers. In response to Item 2, the ORDMI provided weblinks to a policy statement and two directives. For Item 3, ORMDI issued a "no records" response but identified a record that could be responsive that was located on an ORMDI computer. The record was forwarded to the VHA FOIA Office for review, with tracking number of 21-03677-F. For Item 4, ORMDI provided a weblink to a VA policy statement and a list of training materials that were used in trainings provided to VHA employees related to racial bias and discrimination in 2021.

39. On April 14, 2021, VHA provided its initial agency decision for Items 1-4, which included a "no records" response to Items 1 and 2 (copy included as **Attachment K**). It also issued a "no records" response to Item 3, but provided the record that ORMDI identified as potentially responsive to the request. It provided one excel spreadsheet in response to Item 4.

40. On April 24, 2021, Plaintiffs appealed ORMDI's initial agency decision as inadequate for Items 1-4. Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), ORMDI had 20 business days from April 24, 2021, or until May 21, 2021, to respond to Plaintiffs' appeal. On April 26, 2021, ORMDI acknowledged receipt of the appeal.

41. On May 3, 2021, Plaintiffs appealed VHA's initial agency decision as inadequate for Items 1-4. Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), VHA had 20 business days from May 3, 2021, or until May 28, 2021, to respond to Plaintiffs' appeal. On May 3, 2021, VHA acknowledged receiving the appeal.

42. On June 23, 2021, an OGC attorney emailed plaintiffs regarding Items 1-4 (FOIA request 21-03677-F), stating that the agency would not be responding to the plaintiffs' requests "exactly as presented." The OGC attorney stated that the agency would be able to provide "at least some accurate numbers" for aggregate discrimination data from the VA Office of Information and Technology ("OIT").

43. On July 1, 2021, the same OGC attorney emailed Plaintiffs again regarding Items 1-4. The attorney stated that the agency had gathered some aggregate data which would be responsive to Plaintiffs' request.

44. On July 7, 2021, VHA issued a final administrative decision as to Items 1-4, denying Plaintiffs' appeal (copy included as **Attachment L**).

45. VHA failed conduct a reasonable search for records responsive to Items 1-4.

46. For instance, in the appeal decision, VHA acknowledged that the FOIA officer "neither searched nor coordinated a search" of all databases with records potentially responsive to Items 1-4. VHA declined to search VISN or facility-level records or systems of records, as FOIA requires.

47. Moreover, with regard to Item 1, VHA did not explain why it could not break down the 1,057 complaints of unspecified discrimination by year and VHA facility, as requested. As to Item 3, VHA continues to rely on its partial referral to ORMDI, and stated that it otherwise relied only on a national database that did not record race discrimination claims specifically to "identify possible sources of patient discrimination concerns which might have led to a separate investigation." VHA provided no further explanation as to the reasonableness of this search method.

48. In explaining its denial of Plaintiffs' Item 4 appeal, VHA has stated that its search of the TMS database used the terms "race," "racial," "bias," and "discrimination," but did not explain why it failed to use other search terms reasonably likely to identify responsive records, such as "racism," "systemic racism," "prejudice," or "harassment."

49. VHA also withheld employee names in email addresses in records produced in response to Item 4. These partial withholdings were improper, as a lawful balancing of the personal privacy interests and public interest in disclosure under Exemption 6, on which VHA relied, demonstrates.

### *BVA Request*

50. On Tuesday, March 30, 2021, BVA acknowledged receipt of the FOIA request and assigned the FOIA request the tracking number 21-03747-F (copy included as **Attachment M**).

51. BVA was obligated by statute to respond to Plaintiffs' request within twenty (20) business days. This deadline expired on March 22, 2021. BVA has produced no response.

### **CLAIMS FOR RELIEF**

52. Plaintiffs repeats and incorporates every allegation contained in paragraphs 1 – 51 as if set forth here in full.

53. Defendant's failure to notify Plaintiffs within twenty days (excepting Saturdays, Sundays, and legal public holidays) of whether it will comply with their requests violated Plaintiffs' rights to records under 5 U.S.C. §552(a)(6)(A)(i).

54. Defendant's failure to affirmatively disclose policy statements and interpretations, administrative staff manuals and instructions that affect a member of the public, violated Plaintiffs' rights under 5 U.S.C. §552(a)(2)(B-D).

55. Defendant's failure to release responsive, non-exempt records violated Plaintiffs' right to those records under 5 U.S.C. § 552(a)(3)(A).

56. Defendant's failure to make a reasonable search for responsive records violated Plaintiffs' rights under 5 U.S.C. § 552(a)(3)(C).

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Order Defendants to conduct a reasonable search for records responsive to their requests;

2. Order Defendants to disclose and release the requested records in their entireties;

3. Order Defendants to grant a full fee waiver to Plaintiffs;

4. Provide for expeditious proceedings in this action;

5. Award Plaintiffs costs and reasonable attorney's fees in this action;

6. Grant any other and further relief the Court deems appropriate.

Dated: July 8, 2021
New Haven, CT

Respectfully submitted,

By: /s/ Michael J. Wishnie
Matthew Handley, Law Student Intern*
Ryan Liu, Law Student Intern*
Melanie McGruder, Law Student Intern*
Angela L. Zhang, Law Student Intern*
Meghan Brooks, Supervising Attorney**
Michael J. Wishnie, Supervising Attorney, ct27221
Jerome N. Frank Legal Services Organization
Veterans Legal Services Clinic
Yale Law School
P.O. Box 209090
New Haven, CT. 06520-9090
Tel: (203) 432-4800
michael.wishnie@ylsclinics.org

*Motion for law student appearance forthcoming

*\*\* Motion for admission forthcoming*

*Counsel for Plaintiffs*