# Attachment A

# The Jerome N. Frank Legal Services Organization
YALE LAW SCHOOL

February 22, 2021

>*via* electronic mail

**Attn: Angela C. Davis**
Veterans Benefits Administration,
Department of Veterans Affairs
810 Vermont Avenue, NW
(20M33) VACO
Washington, DC 20420
foia.vbaco@va.gov

Re:   Request Under the Freedom of Information Act for Records Related to Disability Claims and Race

Dear FOIA Officer Davis:

This letter constitutes a request ("Request"), pursuant to the Freedom of Information Act ("FOIA")[1] for records[2] in the possession of the Veterans Benefits Administration (VBA). The Request is submitted by the Jerome N. Frank Legal Services Organization on behalf of the Black Veterans Project (BVP) and the National Veterans Council for Legal Redress (NVCLR).

BVP is an organization that advances research and storytelling to understand the full history of the Black veteran experience in the United States, including racial inequities across the military and veteran landscape. NVCLR is a Connecticut-based veterans service organization that engages in advocacy and public education to promote the respect and acceptance of all who served our country, and works to secure benefits for those veterans and their families. To those ends, BVP and NVCLR seek records related to disability claims so that they can learn whether there exist any racial disparities in claim outcomes between Black veterans and non-Black veterans. The information will inform BVP and NVCLR's efforts to increase public awareness of racial disparities in the veteran space if they exist.

## I.   Requested Information

Specifically, we request records sufficient to show:

---

[1] 5 U.S.C. § 552 (2018).
[2] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audiotapes, emails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.

P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • TELEPHONE 203 432-4800 • FACSIMILE 203 432-1426
COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

1

1. The total and aggregate number of disability claims received each year by each VA Regional Office from 2001 to the present, broken down by the race and gender of the veteran.

2. The total and aggregate number of disability claims decided each year by each VA Regional Office from 2001 to the present, and the outcome (e.g., full grant, partial grant, denial) of those claims, broken down by the race and gender of the veteran.

3. The total and aggregate number of disability claims that each Veterans Service Organization (VSO) (38 U.S.C. § 5902) assisted with each year at the Regional Office level from 2001 to the present, and the outcome (e.g., full grant, partial grant, denial) of those claims by VSO and year, broken down by the race and gender of the veteran.

4. The total and aggregate number of disability claims that each Veterans Service Organization (VSO) (38 U.S.C. § 5902) assisted with each year at the Board of Veterans' Appeals from 2001 to the present, and the outcome (e.g., full grant, partial grant, denial) of those claims by VSO and year, broken down by the race and gender of the veteran.

5. The total and aggregate number of disability claims that private attorneys assisted with each year at the Regional Office level from 2001 to the present, and the outcome (e.g., full grant, partial grant, denial) of those claims by year, broken down by the race and gender of the veteran.

6. The total and aggregate number of disability claims that private attorneys assisted with each year at the Board of Veterans' Appeals from 2001 to the present, and the outcome (e.g., full grant, partial grant, denial) of those claims by year, broken down by the race and gender of the veteran.

7. The total and aggregate number of disability claims in which the claimant was not represented by a VSO, private attorney, or other advocate each year from 2001 to the present, and the outcome (e.g., full grant, partial grant, denial) of those claims by year, broken down by the race and gender of the veteran.

8. For mental (including but not limited to post-traumatic stress disorder), respiratory, and neurological (including but not limited to traumatic brain injury) service-connected disabilities, the average rating that veterans receive for that category of disability, for each year from 2001 to the present, broken down by the race of the veteran.

9. For service-connected disabilities where the veteran underwent a Compensation & Pension Examination from a VA medical professional (not a contract examiner), the average disability rating assigned based on such exams each year from 2001 to the present, broken down by the race and gender of the veteran.

10. The average overall disability rating each year from 2001 to the present, broken down by the race and gender of the veteran.

11. For veterans with at least one service-connected disability, the average disability rating increase or decrease each year from 2001 to the present, broken down by the race and gender of the veteran.

12. For veterans with a service-connected disability, the average disability rating increase or decrease each year from 2001 to the present, broken down by the age of the veteran.

13. For veterans with a service-connected disability, the proportion of veterans receiving benefits who had their disability rating decreased, each year from 2001 to the present, broken down by the race and gender of the veteran.

14. The average time between the receipt of a claim for service-connected disability compensation and the initial decision by a VA Regional Office, by the race and gender of the veteran each year from 2001 to the present.

15. Any internal analysis, review, or study that VA has conducted, commissioned, or otherwise obtained regarding racial disparities in service-connected disability compensation, including but not limited to reports, memos, investigations, or guidance.

16. Any training given to Veteran Service Representatives, Veterans Law Judges, or other VA employees regarding racial bias and/or discrimination, as well as how often such trainings must be completed.

**II.     Request for a Fee Waiver**

We agree to pay search, duplication, and review fees up to a total of $100. If the total fees amount to more than $100, we request a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). FOIA requires federal agencies to furnish documents at zero or reduced charges if the "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[3] FOIA's legislative history makes clear that the "fee waiver provision . . . is to be liberally construed in favor of waivers for noncommercial requesters."[4]

      i. <u>The information requested will contribute to the public understanding of the operations and activities of the government.</u>

Disclosure of the requested information would shed light on the operations or activities of the federal government.[5] The Department of Veterans Affairs and its agencies, like the Veterans Benefits Administration, are part of the federal government. The records requested concern VBA's operations and activities in administering disability claims for our nation's veterans. The information will reveal if racial disparities exist in their administration.

---

[3] 5 U.S.C. § 552(a)(4)(A)(iii) (2018).
[4] Fed. Cure v. Lappin, 602 F. Supp. 2d 197, 201 (D.D.C. 2009) (internal quotation marks omitted).
[5] 5 U.S.C. § 552(a)(4)(A)(iii) (2018).

The subject of this Request involves issues that will "contribute significantly to public understanding" of the operations or activities of the VA generally and VBA specifically.[6] In determining whether a request involves issues that will significantly contribute to public understanding, the VA and its agencies consider the subject of the request, the informative value of the disclosed information, the contribution to an understanding of the subject by the public likely to result from the disclosure, and the significance of the contribution to public understanding.[7]

The subject of the request is the federal government's administration of veterans' benefits. Racial disparities in veterans' benefits and services have been documented in academic studies[8] and by the media.[9] For example, half of the respondents to a recent nationwide VA employee survey reported that they "witnessed discrimination against the veterans whom the agency services,"[10] and studies have revealed that Black veterans who were screened for mental health issues are diagnosed with service-connected post-traumatic stress disorder at significantly lower rates than non-Black veterans.[11] In a time of renewed public focus on and interest in tackling racial bias and disparities in government,[12] the information requested will shine a light on whether racial

---

[6] 38 C.F.R. § 1.555(f)(2) (2020).

[7] *Id.*

[8] *See, e.g.*, Nathaniel Rickles, Silvia Domínguez & Hortensia Amaro, *Perceptions of Healthcare, Health Status, and Discrimination Among African-American Veterans*, 4 J. HEALTH DISPARITIES RES. & PRAC. 50, 50 (2010) ("[A] significant proportion of African-American veteran participants . . . reported perceived discrimination in healthcare, low perceived quality of care, and low levels of satisfaction with the healthcare they receive."); Somnath Saha, Michele Freeman, Joahd Toure, Kimberly M. Tippens, Christine Weeks & Said Ibrahim, *Racial and Ethnic Disparities in the VA Health Care System: A Systematic Review*, 23 J. GENERAL INTERNAL MED. 654, 654 (2008) ("Racial disparities in the VA exist across a wide range of clinical areas and service types.").

[9] *See, e.g.*, Alex Horton, *VA Will be Investigated After 'Staggering Accounts of Racism,' Sen. Warren Says*, WASH. POST (Oct. 1, 2020), https://www.washingtonpost.com/national-security/2020/10/01/gao-racism-veterans-affairs [https://perma.cc/E5NV-H6F5] ("White and Black veterans [were] treated differently while in crisis. Black veterans were removed from his facility for aggressive behavior that was overlooked for White veterans."); Matt Evans, *Protestors Calling for End to Racial Discrimination at Kansas City VA Medical Center,* KMBC NEWS (June 15, 2020), https://www.kmbc.com/article/protesters-calling-for-end-to-racial-discrimination-at-kansas-city-va-medical-center/32867533 [https://perma.cc/LM85-HGGK] (reporting on allegations of "racial discrimination against black veterans and black staff members" at a VA hospital, which included "an emergency room nurse who allegedly called a black veteran a racial slur").

[10] Alex Horton, *Most VA Workers See Racism Against Colleagues and Veterans, Union Survey Finds*, WASH. POST (Aug. 7, 2020), https://www.washingtonpost.com/national-security/2020/08/07/veterans-affairs-racism [https://perma.cc/JXH2-RQ7J] ("Nearly 80 percent of Veterans Affairs employees surveyed by their workers union in July said endemic racism within the federal government's second-largest organization is a moderate or serious problem, with more than half reporting they have witnessed discrimination against the veterans whom the agency serves.").

[11] *See, e.g.*, Maureen Murdoch, James Hodges, Diane Cowper, Larry Fortier & Michelle van Ryn, *Racial Disparities in VA Service Connection for Posttraumatic Stress Disorder Disability*, 41 MEDICAL CARE 536, 536 (2003) ("'Black persons' rates of service connection for PTSD were substantially lower than other veterans even after adjusting for differences in PTSD severity and functional status.").

[12] "While the death of George Floyd at the hands of Minneapolis police has incited a nationwide reckoning over racial injustice and overt racism, VA workers who were surveyed said that such issues have run deep within their workplace since long before Floyd's death in May." Horton, *supra* note 10. *See also* Giovanni Russonello, *Why Most Americans Support the Protests*, N.Y. TIMES (June 5, 2020), https://www.nytimes.com/2020/06/05/us/politics/

disparities exist in VA's administration of disability benefits and, if so, the extent of any disparities. Thus, disclosure of this information will be significant to public understanding of the VA. Furthermore, it is also in the public's interest to know if the disclosed information reveals that no disparity exists, as this could increase the trust that Black veterans, a population of over 2.1 million,[13] have in the VA.

        ii.    <u>The information requested is not in the commercial interest of the requesters.</u>

BVP and NVCLR are noncommercial requesters. BVP was founded to understand racial bias in military life, from active duty to post-service benefits and services. To that end, BVP draws on data to foster new research to educate the public, elected officials, and military stakeholders on issues facing Black veterans. The requested information will inform BVP's efforts and allow BVP to share this information with the public, potentially in the form of a report and an article in a publication.[14]

NVCLR has been serving veterans in the Connecticut area since 1982. The organization operates a referral network to direct veterans to legal assistance and social services, and also engages in legal and policy advocacy on behalf of veterans. In addition to providing veterans with support in obtaining employment, meals, clothing, transportation, and housing, NVCLR is particularly focused on the issue of benefits-access. The organization advocated for years to ensure that all who served our country are able to secure crucial benefits and compensation.[15] The requested information will further this mission by allowing NVCLR to better understand the realities of the disability compensation system and use this knowledge to assist veterans.

Neither BVP nor NVCLR will make commercial use of the requested information and neither organization has a commercial interest in accessing the requested records. Therefore, BVP's and NVCLR's primary interest in disclosure is not commercial.

### III.    Expectation for Response

---

polling-george-floyd-protests-racism.html [https://perma.cc/7UZM-WLYU] (detailing how "never before in the history of modern polling have Americans expressed such widespread agreement that racial discrimination plays a role . . . in society at large" and how most Americans surveyed agreed that "the country needed to do more to ensure that black people gained equal rights").

[13] U.S. CENSUS BUREAU, *Veteran Status* (2019), https://data.census.gov/cedsci/table?q=S2101&tid=ACSST1Y 2019.S2101&hidePreview=true [https://perma.cc/U6BN-3YFB].

[14] BVP and its staff have a demonstrated ability to disseminate information to the wider public, such as through publishing and being profiled in major publications. *See, e.g.*, Richard Brookshire, *Serving in the Army as a Queer Black Man Opened My Eyes to Racism in America*, N.Y. TIMES (June 4, 2020), https://www.nytimes.com/2020/06/ 04/magazine/army-veteran-racism-protest.html [https://perma.cc/A6J9-EJ65] (op-ed by BVP's founder); Quinisha Jackson-Wright, *Fighting for Change*, USA TODAY SPECIAL EDUC. 96 (Nov. 2019), https://issuu.com/studiogannett/ docs/veterans_affairs_2019/96 [https://perma.cc/2R2G-8YCD] (detailing BVP's mission and advocacy).

[15] *See, e.g.*, Anna Biasaro, *Blumenthal: More Work Needed to Get Veterans Help with PTSD* (Nov. 13, 2015), MIDDLETOWN PRESS, https://www.middletownpress.com/news/article/Blumenthal-More-work-needed-to-get-veterans-help-11802491.php [https://perma.cc/33TV-QC6T] (detailing the NVCLR founders' work to "educate fellow veterans about the chance of upgrading their discharge status and gaining access to medical care through the VA").

We expect the determination of this Request within twenty (20) business days pursuant to 5 U.S.C. §552(a)(6)(A)(i). If this Request is denied in whole or in part, please justify all redactions by reference to the specific FOIA exemption(s) in accordance with *Vaughn v. Rosen*.[16] In addition, please release all disclosable portions of otherwise exempt material. We reserve the right to appeal your decision to withhold any information or to deny a fee waiver.
Thank you for your prompt attention to this matter.

Very Respectfully,

    Grace Judge, Law Student Intern
    Ryan Liu, Law Student Intern
    Aubrey Stoddard, Law Student Intern
    Angela L. Zhang, Law Student Intern
    Renée A. Burbank, Supervising Attorney
    Dana Montalto, Supervising Attorney
    Michael Wishnie, Supervising Attorney

---

[16] 484 F.2d 820 (D.C. Cir. 1973).